FILED
2026 May-18  PM 06:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JAYLIN KEMP and AQLIMATE LLC,** | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) **Case No.: 2:26-cv-00129-NAD** |
| v. | ) |
| | ) |
| **JEFFREY WATSON, ALL STAR ELITE** | ) |
| **LLC,** | ) |
| **and WATSON APPAREL CO., LLC,** | ) |
| | ) |
| *Defendants.* | ) |

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(5) AND 12(b)(6)**

**COME NOW** Defendant Jeffrey Watson, individually,[1] and, contingent on, and effective upon, the Court's grant of the concurrently-pending Motion to Set Aside Entry of Default, Defendants Watson Apparel Co., LLC and All Star Elite, LLC (collectively, the "LLC Defendants," and together with Mr. Watson, "Defendants"), by and through undersigned counsel, and respectfully move this Honorable Court, pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), to dismiss the Complaint (Doc. 1) for insufficient service of process as to Mr. Watson and for failure to state a claim upon which relief can be granted. Mr. Watson, who was purportedly served on April 21, 2026, files this Motion within a reasonable time after the technical expiration of his twenty-one-day response period and before any motion for entry of default has been sought or entered against him; he is therefore not in default. The

---

[1]The Proof of Service filed in this action (Doc. 14) describes the individual purportedly served on April 21, 2026 as "a blonde-haired white male contact 25-35 years of age, 5'6″–5'8″ tall and weighing 180–200 lbs with a beard." That description does not match Mr. Watson's actual age or appearance, and Mr. Watson does not concede that service was properly effected on him personally. As set forth in Section IV.C, *infra*, Mr. Watson moves to dismiss under Rule 12(b)(5) on this basis.

1

LLC Defendants join in this Motion in all respects except Section IV.C below, which is brought by Mr. Watson individually because it concerns service of process upon him personally; the LLC Defendants do not contest the sufficiency of service upon their respective registered agents. In support of this Motion, Defendants state as follows:

## I.  INTRODUCTION

Plaintiffs' Complaint asserts a sprawling six-count trademark and unfair-competition action arising from a single allegedly infringing design, a stylized dragonfly, appearing on a category of products (hoodies and other apparel). The Complaint nonetheless suffers from a foundational pleading defect: it consistently lumps three distinct defendants together as "Defendants" and asserts that the unitary, undifferentiated "Defendants" "procure," "market," "distribute," "manufacture," "sell," and "offer for sale" infringing apparel. (See, e.g., Doc. 1 ¶¶ 20, 22, 23, 25, 29, 32.) Nowhere does the Complaint allege which of the three Defendants did what. That is fatal.

The deficiency is most acute as to Defendant Jeffrey Watson, who is named as an individual but as to whom the Complaint pleads no factual conduct at all. The sole allegation specific to Mr. Watson is a one-sentence assertion that he "owns and operates retail apparel stores with online sales directed to and physical locations in the State of Alabama." (Doc. 1 ¶ 5.) That conclusory, status-based allegation that is untethered to any act of trademark infringement cannot survive *Iqbal* and *Twombly*. The Complaint contains no allegation that Mr. Watson personally manufactured, designed, sold, advertised, or distributed any product bearing the disputed dragonfly mark; that he authorized or directed any allegedly infringing act; or that the LLC Defendants are his alter egos. Members of a limited liability company do not become

personally liable for the company's torts merely by being members. Without specific factual allegations of personal participation in the infringing conduct, the claims against Mr. Watson individually must be dismissed. Independently, the purported service of process on Mr. Watson is materially defective. The Proof of Service describes a person who does not match Mr. Watson's actual age or appearance and provides an alternative basis for dismissal under Rule 12(b)(5).

Several of the substantive counts independently fail. Count II (federal dilution under 15 U.S.C. § 1125(c)) collapses because the Complaint pleads no facts plausibly showing that a stylized dragonfly used since 2023 by a single Texas LLC has achieved the rigorous nationwide fame that the Trademark Dilution Revision Act requires. Count III (counterfeiting under 15 U.S.C. § 1114) is foreclosed as to all alleged conduct predating November 11, 2025, the date Plaintiff Kemp's mark was first registered.

## II.  RELEVANT ALLEGATIONS

Plaintiff Jaylin Kemp is a Texas resident who created a stylized needle logo in 2023 in connection with an apparel brand he calls "Aqlimate." (Doc. 1 ¶¶ 12–16.) His online store "went live on or about May 24, 2024." (*Id.* ¶ 16.) Kemp "applied for and, on November 11, 2025, was granted U.S. Trademark Registration No. 8,022,044 for the Mark." (*Id.* ¶ 17.) The Complaint alleges that in "late 2025" Kemp learned of allegedly infringing apparel. (*Id.* ¶ 21.) Plaintiffs' counsel sent a single demand letter on December 1, 2025. (*Id.* ¶ 27.)

As to the three Defendants, the Complaint alleges that Watson Apparel Co., LLC and All Star Elite, LLC are Virginia limited liability companies headquartered at the same Virginia Beach address. (*Id.* ¶¶ 6–7.) Defendant Jeffrey Watson is alleged to be an adult Virginia Beach

3

resident who "owns and operates retail apparel stores with online sales directed to and physical locations in the State of Alabama." (*Id.* ¶ 5.) The Complaint contains no other specific factual allegation about Mr. Watson personally. From paragraph 20 onward, the Complaint refers exclusively to the conduct of "Defendants" collectively, without distinguishing between the two LLCs and the individual or between the two LLCs as among themselves.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court must separate the factual allegations from the legal conclusions and then determine whether the surviving factual allegations "give rise to an entitlement to relief." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Plaintiffs also must comply with Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where a complaint involves multiple defendants, the plaintiff must give each defendant fair notice of which acts it is alleged to have committed. The Eleventh Circuit has repeatedly condemned "shotgun pleadings" in which a complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendant(s) are responsible for which acts or

omissions, or which of the defendant(s) the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

## IV.  ARGUMENT

**A.  The Complaint Engages in Impermissible "Group Pleading" and Fails to Provide Defendants Fair Notice of Their Allegedly Wrongful Conduct.**

The Complaint is a textbook "shotgun pleading." After identifying three Defendants in the Parties section, it proceeds for the remainder of its 78 paragraphs as if the three Defendants were one. "Defendants procure, market, distribute, and sell" apparel. (Doc. 1 ¶ 20.) "Defendants were impermissibly selling apparel." (*Id.* ¶ 21.) "Defendants manufacture and sell hoodies." (*Id.* ¶ 23.) "Defendants' products" are "of inferior quality." (*Id.* ¶ 24.) "Defendants' wrongful acts will continue." (*Id.* ¶ 41.) This pattern continues through every substantive count of the Complaint.

The Eleventh Circuit has "little tolerance for shotgun pleadings," *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018), and "repeatedly condemned [them]," *Weiland*, 792 F.3d at 1321. One of the principal varieties of impermissible shotgun pleading is precisely the variety on display here: a complaint that "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts." *Id.* at 1323. Such pleadings violate Rule 8(a)(2) by failing to give each defendant "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

The defect is not a hyper-technical one. On the face of the Complaint, each Defendant is left to guess: Did the Complaint mean to allege that Watson Apparel manufactured the accused hoodies, or All Star Elite? Did Mr. Watson personally? Which Defendant operates the brick-and-mortar store identified in Hoover, Alabama? Which Defendant operates the online sales platform? Which Defendant signed off on the allegedly counterfeit designs? The Complaint offers no answer. That is precisely the kind of "undifferentiated" pleading that *Iqbal* forecloses. *Iqbal*, 556 U.S. at 678; *see also Marsh v. Butler Cnty.*, 268 F.3d 1014, 1022 n.6 (11th Cir. 2001) (en banc).

The Complaint should be dismissed in its entirety on this ground alone.

**B. The Complaint Fails to Plausibly Allege Any Conduct by Mr. Watson Sufficient to Subject Him to Individual Liability.**

The Complaint's group-pleading problem becomes a fatal one as to Mr. Watson individually. With the Complaint's collective "Defendants" allegations stripped away as *Iqbal* requires, the only factual allegation that remains as to Mr. Watson personally is paragraph 5: that he "owns and operates retail apparel stores with online sales directed to and physical locations in the State of Alabama." (Doc. 1 ¶ 5.) That is not enough.

It is black-letter law that purported members of a limited liability company are not personally liable for the company's debts or torts merely by virtue of their membership. Ala. Code § 10A-5A-3.01 ("A member . . . is not liable, solely by reason of being or acting as a member . . . , under a judgment, decree, or order of a court, or in any other manner, for a debt, obligation, or liability of the limited liability company."); Va. Code § 13.1-1019 (same). To impose *personal* liability on a purported member of an LLC for the LLC's allegedly tortious

6

conduct, a plaintiff must allege either (a) facts supporting alter-ego or veil-piercing, or (b) facts showing that the member personally participated in the wrongful conduct.

In Lanham Act cases specifically, courts impose personal liability on a corporate officer or LLC member only where the plaintiff pleads specific facts showing the individual "actively and knowingly cause[d] the infringement." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477–78 (11th Cir. 1991); *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994). General allegations that an officer "directed" or "controlled" the company, let alone the bare allegation that he "owns and operates" it, are insufficient.

Plaintiffs plead no such facts here. The Complaint does not allege that Mr. Watson:

- personally designed the accused dragonfly artwork;

- personally selected, approved, or directed the production of any allegedly infringing garment;

- personally made any sale of any allegedly infringing product;

- personally advertised or promoted any allegedly infringing product;

- personally received or responded to (or refused to respond to) Plaintiffs' December 1, 2025 demand letter;

- is the alter ego of either LLC Defendant; or

- disregarded LLC formalities, commingled funds, or otherwise engaged in any conduct supporting veil-piercing.

The Complaint instead asks the Court to infer Mr. Watson's personal liability from the bare fact that the LLC Defendants share a Virginia Beach address with him and the conclusory

7

assertion that he "owns and operates" the businesses. That is exactly the kind of "sheer possibility" inference that *Iqbal* forbids. 556 U.S. at 678. All six Counts must be dismissed as to Mr. Watson individually.

**C.  In the Alternative, the Complaint Should Be Dismissed As to Mr. Watson Under Rule 12(b)(5) Because Service of Process Was Not Properly Effected.**

This Section is brought by Defendant Watson individually. The LLC Defendants do not join in or rely upon this argument, having themselves been served through their respective commercial registered-agent services. (Docs. 5, 6.) Federal Rule of Civil Procedure 12(b)(5) permits dismissal where service of process is insufficient. Service on an individual within the United States must comply with Rule 4(e), which requires either (i) compliance with the law of the state where the district court is located or where service is made, (ii) personal delivery to the individual, (iii) leaving a copy at the individual's dwelling or usual place of abode with a person of suitable age and discretion residing there, or (iv) delivery to an agent authorized to receive process. Fed. R. Civ. P. 4(e)(1)–(2). Without proper service of process, the district court has no power to enter a judgment against the defendant. *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 (11th Cir. 2003).

The plaintiff bears the burden of establishing that service was properly effected. *Anderson v. Osh Kosh B'Gosh*, 255 F. App'x 345, 347 (11th Cir. 2007) (per curiam). A sworn return of service has prima facie validity, but that presumption is rebutted by evidence showing the return is inaccurate. *See, e.g., Udoinyion v. The Guardian Sec.*, 440 F. App'x 731, 735 (11th Cir. 2011).

8

Two features of the Proof of Service filed here defeat the prima facie validity of the return. *First*, the Proof of Service identifies the address of service as "100 Landmark Sq, Virginia Beach, VA 23452," which is the LLC Defendants' principal place of business as alleged in the Complaint itself, not Mr. Watson's "dwelling or usual place of abode." (*Compare* Doc. 14, *with* Doc. 1 ¶¶ 6–7 (alleging that both Watson Apparel and All Star Elite have their principal place of business at 100 Landmark Square, Virginia Beach, Virginia).) The Proof of Service therefore cannot be sustained under Rule 4(e)(2)(B) (abode service). It can be sustained, if at all, only as personal delivery under Rule 4(e)(2)(A). *Second*, the Proof of Service expressly states that "identity" was "confirmed by physical description" and goes on to describe the individual served as "a blonde-haired white male contact 25-35 years of age, 5'6″–5'8″ tall and weighing 180–200 lbs with a beard." (Doc. 14.) As set forth in the Declaration of Jeffrey Watson (attached hereto as Exhibit A), that description does not match Mr. Watson's actual age or appearance. The process server's conclusory notation that "identity" was "confirmed" cannot, in the face of a sworn declaration that the recorded description is materially incorrect, supply what Rule 4(e)(2)(A) requires: actual delivery to "the individual" named in the summons.

Nor does the Proof of Service's reference to a purported "refusal" save the return. Federal courts recognize that a defendant cannot defeat otherwise proper service by physically refusing the papers once a process server has correctly identified him and tendered the documents in his presence. But that "refusal" doctrine presupposes that the server has identified *the right person*. Where, as here, the description of the individual to whom papers were tendered does not match the named defendant, the threshold requirement that delivery be made to "the individual" is not satisfied, and the refusal doctrine cannot supply the missing element.

Accordingly, the Court should dismiss the claims against Mr. Watson individually under Rule 12(b)(5). In the alternative, the Court should quash the purported service and direct Plaintiffs to effect proper service of process upon Mr. Watson within the time permitted by Rule 4(m).

**D.  Count II (Federal Dilution) Must Be Dismissed Because the Complaint Does Not Plausibly Allege That the Mark Is "Famous."**

To state a claim for federal trademark dilution under 15 U.S.C. § 1125(c), a plaintiff must plausibly allege that its mark is "famous" within the meaning of the Trademark Dilution Revision Act. A mark is famous "only if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A) (emphasis added). The TDRA "significantly heightened" the fame requirement: "niche fame" is no longer sufficient. *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012); *see also Bd. of Regents, Univ. of Tex. Sys. ex. rel. Univ. of Tex. at Austin v. KST Elec., Ltd.,* 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008). (TDRA fame is reserved for marks "such as Budweiser beer, Camel cigarettes, [and] Barbie dolls").

The statute itself enumerates the factors that bear on whether a mark has achieved this rarefied status: the "duration, extent, and geographic reach of advertising and publicity of the mark"; the "amount, volume, and geographic extent of sales of goods or services offered under the mark"; the "extent of actual recognition of the mark"; and whether the mark is federally registered. 15 U.S.C. § 1125(c)(2)(A)(i)–(iv). A complaint must plead facts addressing these factors; conclusory assertions of fame do not survive *Iqbal*.

The Complaint here offers no such facts. It alleges only that: (a) Mr. Kemp "engaged a marketing company" in early 2023; (b) his website "went live" in May 2024; (c) he obtained a registration in November 2025; and (d) he has used the Mark "continuously . . . since 2023" including "on social media." (Doc. 1 ¶¶ 13–18.) That is the sum total of the Complaint's "fame" allegations. There are no sales figures, no advertising expenditures, no media coverage, no surveys, no industry recognition, no awards, and no plausible factual basis to support the conclusory assertion in paragraph 48 that "the Mark is famous within the meaning of Section 43(c)."

Plausibility is impossible on these facts. A mark that has been in use for approximately three years, by a single Texas LLC, primarily through "social media" and an online store that went live in mid-2024, with no pleaded sales volume or advertising budget, cannot plausibly be in the same league as Budweiser, Coca-Cola, or Barbie. *See Coach Servs.*, 668 F.3d at 1373. Count II must be dismissed.

**E.  Count III (Counterfeiting) Must Be Dismissed As to All Conduct Predating November 11, 2025.**

A claim for trademark counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114, requires a federally *registered* mark. *See* 15 U.S.C. § 1114(1)(a) (creating liability for use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark"); 15 U.S.C. § 1116(d)(1)(B)(i) (defining "counterfeit mark" as one "registered on the principal register . . . and in use"). No registration, no Section 32 claim.

The Complaint alleges that Plaintiff Kemp obtained his registration on November 11, 2025. (Doc. 1 ¶ 17.) Yet the Complaint also alleges that Plaintiffs "learned" of the allegedly

11

infringing sales "[i]n late 2025" and pleads no facts about when Defendants' allegedly infringing conduct actually commenced. (*Id.* ¶ 21.) To the extent Plaintiffs intend Count III to reach conduct that occurred before November 11, 2025, a time when the mark was, at most, an unregistered common-law mark, the Count must be dismissed. At minimum, the Court should require Plaintiffs to replead Count III to identify the specific post-registration sales they contend are counterfeit.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order: (1) dismissing all claims against Defendant Jeffrey Watson individually under Rule 12(b)(6) for failure to state a claim; (2) in the alternative, dismissing all claims against Defendant Jeffrey Watson without prejudice under Rule 12(b)(5) for insufficient service of process, or quashing the purported service and directing Plaintiffs to effect proper service of process upon him within the time permitted by Rule 4(m); (3) dismissing Counts II in its entirety; (4) dismissing Count III to the extent it is premised on conduct predating November 11, 2025; (5) dismissing Counts I and IV without prejudice for failure to satisfy Rule 8(a)(2) and the Eleventh Circuit's prohibition on shotgun pleading; and (6) granting any further relief the Court deems just and proper. In the alternative, and at minimum, Defendants request that the Court order Plaintiffs to replead the Complaint to allege which Defendant is alleged to have committed which specific acts.

Respectfully submitted this 18th day of May, 2026.


_/s/Douglas L Bridges_
Douglas L. Bridges (1974N06L)
AdamsIP, LLC
453 Dauphin Street
Mobile, Alabama  36602
Phone:  251-289-9787
doug@adamsiplaw.com

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of May, 2026, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to all counsel of record, including:

> Kenneth M. Perry
> Ambria L. Lankford
> Jennifer M. Moore
> KEN PERRY LAW FIRM, LLC
> 1615 Financial Center
> 505 20th Street North
> Birmingham, AL 35203
> kp@kenperrylawfirm.com
> all@kenperrylawfirm.com
> jmm@kenperrylawfirm.com

> /s/ Douglas L. Bridges
> Douglas L. Bridges

14

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JAYLIN KEMP and AQLIMATE LLC,** | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) **Case No.: 2:26-cv-00129-NAD** |
| v. | ) |
| | ) |
| **JEFFREY WATSON, ALL STAR ELITE** | ) |
| **LLC,** | ) |
| **and WATSON APPAREL CO., LLC,** | ) |
| | ) |
| *Defendants.* | ) |

**DECLARATION OF JEFFREY WATSON IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

I, Jeffrey Watson, declare as follows, pursuant to 28 U.S.C. § 1746:

1.      I am the named individual Defendant Jeffrey Watson in the above-captioned action. I am over the age of eighteen, am of sound mind, and am competent to make this Declaration. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently to them.

2.      I respectfully submit this Declaration in support of the contemporaneously-filed Defendants' Motion to Dismiss the Complaint, and specifically in support of the argument set forth in Section IV.C of that Motion that the purported service of process upon me on April 21, 2026 was insufficient under Federal Rules of Civil Procedure 12(b)(5) and 4(e).

3.      The address identified in the Proof of Service filed in this action, 100 Landmark Square, Virginia Beach, Virginia 23452, is a commercial address. It is not my dwelling, it is not my usual place of abode, and I do not reside there.

1

Doc ID: aac4ac524bc45f3e201563a84eb963658890ecc3

4.    My actual physical characteristics are as follows:

   a.  Age as of April 21, 2026: 57 years;

   b.  Height:6 feet 1 inches;

   c.  Weight: approximately 220 pounds;

   d.  Hair color: bald;

   e.  Facial hair salt-and-pepper beard

   g.  Race / complexion: white

5.  My physical appearance is easily obtainable from public information sources such as this image captured from the first video available from my Instagram account @jeff.s.watson.



2

Doc ID: aac4ac524bc45f3e201563a84eb963658890ecc3

6. I have reviewed the Proof of Service filed in this action (Doc. 14), which describes the individual to whom the process server purportedly tendered the Summons and Complaint on April 21, 2026 as "a blonde-haired white male contact 25-35 years of age, 5'6″–5'8″ tall and weighing 180–200 lbs with a beard." That description does not match my actual age or appearance, as reflected in Paragraphs 4-5 above.

6. On April 21, 2026, no process server, courier, or any other individual tendered to me, or attempted to tender to me, any summons, complaint, or other legal papers in connection with this action. No one delivered any such papers into my hand or left any such papers in my presence on that date.

7. I did not refuse to accept service of any documents on April 21, 2026. I was not approached by any individual identifying himself or herself as a process server on April 21, 2026.

8. I have not authorized any individual to accept service of process on my behalf in this action.

9. I am the person primarily responsible for responding to litigation on behalf of All Star Elite LLC and Watson Apparel Co., LLC, and I was not provided with the complaint and service documents until after the court's entry of default against All-Star Elite LLC and Watson Apparel Co. LLC.

3

Doc ID: aac4ac524bc45f3e201563a84eb963658890ecc3

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 18th day of May 2026.

_____
**JEFFREY WATSON**

4

Doc ID: aac4ac524bc45f3e201563a84eb963658890ecc3

# Exhibit B

**Trademark/service mark application, Principal Register**
Serial number: 99101125
Mark: No wording
Mark format: Design only
Filing date: March 24, 2025 at 6:53:37 PM ET
Docket number: 815621.00003
Owner name: Jaylin Kemp
Amount paid: $ 700 (2 classes)

# Trademark details

Mark



Mark Description

a vertically arranged needle with a single thread threaded through or wrapped around the needle three times and forming the image of a flying insect

Mark Format

Design only

Color claim

Color is not claimed as a feature of the mark.

# Owner information

| *Name | Jaylin Kemp |
|---|---|
| Entity type | Individual |
| Place of organization/citizenship | United States |
| **Mailing address information** | |
| *Address line 1 | 4653 Nail Road |
| Address line 2 | Unit D-9 |
| *City | Dallas |
| *State/territory | Texas |
| *Zip/postal code | 75244 |
| *Country/region/jurisdiction/territory | United States |
| *Email address | ******* |
| **Domicile address information** | |

The mailing address is the same as the owner's domicile address.

# Goods and services

## Filing basis information

Section 1(a)

## Identification of goods and services

**International Class 025**
Filing basis: Section 1(a)

Shirts; Clothing jackets; Raincoats; Rainwear; Vests; Hooded sweatshirts; Footwear; Polo shirts; Sweatpants; Sweatsuits;

Tops as clothing; Bottoms as clothing

**Specimen Information**

| | |
|---|---|
| First use anywhere date | At least as early as 05/05/2024 |
| First use in commerce date | At least as early as 05/05/2024 |
| Specimen file name | Aqlimate hoodie.pdf |
| URL | None specified. |
| Date of access | None specified. |
| Description | Photographs showing the mark on a label attached to the goods |

**Specimen Information**

| | |
|---|---|
| First use anywhere date | At least as early as 05/05/2024 |
| First use in commerce date | At least as early as 05/05/2024 |
| Specimen file name | aqlimate 1.pdf |
| URL | https://aqlimate.com/products/ |
| Date of access | 03/21/2025 |
| Description | Webpages with means to order goods |

**International Class 035**

Filing basis: Section 1(a)

Retail store services featuring **apparel, footwear, rainwear, sportswear**

**Specimen Information**

| | |
|---|---|
| First use anywhere date | At least as early as 05/05/2024 |
| First use in commerce date | At least as early as 05/05/2024 |
| Specimen file name | Aqlimate _ Uncommon Threads – AQLIMATE.pdf |
| URL | https://aqlimate.com/ |
| Date of access | 03/21/2025 |
| Description | Webpage |

# Additional statements

| | |
|---|---|
| Translation (if applicable) | |
| Transliteration (if applicable) | |
| Consent (name/likeness) (if applicable) | |
| Claim of ownership of active prior registrations(s) (if applicable) | |
| Section 2(f) Claim of acquired distinctiveness (if applicable) | |
| Additional statements including use of the mark in another form (if applicable) | |
| Significance of mark | |
| Disclaimer | |

# Attorney information

## Attorney name and address

| | |
|---|---|
| *Name | C. Brandon Browning |
| Law firm | Maynard Nexsen PC |
| *Address line 1 | 1901 6th Avenue North |
| Address line 2 | Suite 1700 |
| *City | Birmingham |
| *State/territory | Alabama |
| *Zip/postal code | 35203 |
| *Country/region/jurisdiction/territory | United States |
| *Email address | bbrowning@maynardnexsen.com |
| Primary telephone number | (205) 254-1036 |
| Extension | None specified. |

## Attorney registration information

| | |
|---|---|
| *Bar membership or registration number | ******* |
| *Jurisdiction | ******* |
| *Year of admission | ******* |

Statement of good standing

The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state or commonwealth, the District of Columbia, or any U.S. territory.

Docket or reference number

815621.00003

## Correspondence information

| | |
|---|---|
| *Correspondence name | C. Brandon Browning |
| *Primary correspondence email address | bbrowning@maynardnexsen.com |
| Docket or reference number | 815621.00003 |
| Courtesy copy email addresses | ustrademark@maynardnexsen.com; tebbert@maynardnexsen.com |

## Fee information

| | |
|---|---|
| Application filing option | Trademark/service mark application, Principal Register |
| Number of classes | 2 |
| Base application fee, per class | $ 350 |
| Total fees paid | $ 700 |

## Declaration and signature

### Declaration

[ X ] Basis:

If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

And/or

If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

[ X ] To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

[ X ] To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

[ X ] The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

| | |
|---|---|
| Electronic Signature | /C. Brandon Browning/ |
| Signatory's name | C. Brandon Browning |
| Signatory's position | Attorney of Record, AL Bar member |
| Date signed | 03/24/2025 |
| Signature method | Signed directly within the form |

STAMP:USPTO/APPB-*.**.*.***-20250324185337050381-99101125-16.0-98893ca1-347b-4ea6-88e2-7a26baad9a16-DA-20250321204330640399



# A Q L I M A T E

FREE SHIPPING ON ALL ORDERS











'Pumpkin Spice' Hoodie
AQLIMATE
$105.00 USD

"Strawberry" Dragonfly Hoodie
AQLIMATE
$105.00 USD

"Lemonade" Dragonfly Hoodie
AQLIMATE
$105.00 USD

"Royal Berry" Dragonfly Hoodie
AQLIMATE
$105.00 USD

CLAIM 12% OFF!





'Panda' Dragonfly Hoodie
AQLIMATE
$105.00 USD

1/4     >

View all

We believe in clothing that makes you feel like you. We craft livable luxury that meets customers in the stage they are in and allows them to fit in while standing out.

We are eliminating the need to try and be someone else, Aqlimate is already in your nature. Because of our ability to create attainable luxury that embraces a lifestyle of authenticity and adaptability, Aqlimate is moving the needle in the fashion industry through elevated, luxury that ties together uncommon threads.

**CLAIM 12% OFF!**

aqlimate | Uncommon Threads | AQLIMATE



CLAIM 12% OFF!

HIGH-END

# The *Sharp* Center Shape.

The center shape represents a needle and thread.

**GET AQLIMATED**

QUIET LUXURY

# The *Dynamic* Thread.

Weaving in and out of the needle is the thread.

**GET AQLIMATED**

**CLAIM 12% OFF!**

❶



QUALITY

# The *Humble* Dragonfly.

All together these elements become a **dragonfly.**

GET AQLIMATED



## AQLIMATE IS MORE THAN A DAILY OUTFIT.

By drawing deep inspiration from nature through the dragonfly and the use of natural colors, we are knitting nature's elements together to create quiet luxury. Our dragonfly icon represents the adaptability and grace found in nature that is threaded into who we are and how we operate. Our clothing can seamlessly transform to allow success across multiple occasions and stages of life and our business can evolve to drive trends and meet customer's needs.

ABOUT US

Get Aqlimated

Instagram

TikTok

Knitting together nature's elements to create quiet luxury.

Policies

Shipping Policy

Refund Policy

Privacy Policy

Join our email list

Email →

Follow on **shop**

© 2025, AQLIMATE Powered by Shopify  ·  Refund policy  ·  Privacy policy  ·  Terms of service  ·  Shipping policy  ·  Contact information

CLAIM 12% OFF!





SHOP    ABOUT US    POLICIES








# 'MK' Raincoat

**$100.00 USD**

Tax included. Shipping calculated at checkout.

Pay in 4 interest-free installments of **$25.00** with shop Pay Learn more

Size

| Small | Medium | Large | Extra Large |

Double Extra Large

Quantity

− 1 +

Add to cart

Buy with shop Pay

More payment options

Redefining luxury in the elements. The 'MK' Rain Jacket—crafted with premium GORE-TEX technology for unparalleled waterproof performance and

CLAIM 12% OFF!

Live chat

# AQLIMATE

SHOP    ABOUT US    POLICIES ⌄



# "Slate" Sweatpants

## $80.00 USD

Tax included. Shipping calculated at checkout.

Pay in 4 interest-free installments of **$20.00** with shop Pay Learn more

**Size**

| Small | Medium | Large | Extra Large |

Double Extra Large

**Quantity**

−  1  +

**Add to cart**

Buy with shop Pay

More payment options

Created for comfort, elevated for style, the 'Slate' sweats feature a refind grey fabric with a unique screen printed dragonfly design. Rivets surround the design, adding an edgy, yet sophisticated touch. Perfect for the modern individual who values both luxury and comfort.

CLAIM 12% OFF!

💬 Live chat

# AQLIMATE

SHOP    ABOUT US    POLICIES ⌄







## "Cappuccino" Dragonfly Hoodie

**$105.00 USD**

Tax included. Shipping calculated at checkout.

Pay in 4 interest-free installments of **$26.25** with **shop** Pay Learn more

Size

| Small | Medium | Large | Extra Large |

Double Extra Large

Quantity

[ − ]  1  [ + ]

Add to cart

Buy with **shop** Pay

More payment options

Vintage Gradient Color Fade





CLAIM 12% OFF!

 Live chat